**2022 WI App 20**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2020AP1746-CR

†Petition for Review filed

Complete Title of Case:

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JOSEPH M. MARKS,

DEFENDANT-APPELLANT.†

| | |
|---|---|
| Opinion Filed: | April 27, 2022 |
| Submitted on Briefs: | June 15, 2021 |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Nashold, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS: On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven Roy* of Sun Prairie.

Respondent
ATTORNEYS: On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Aaron R. O'Neil*, assistant attorney general, and *Joshua L. Kaul*, attorney general.

# COURT OF APPEALS
# DECISION
# DATED AND FILED

## April 27, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.    2020AP1746-CR** | Cir. Ct. No.  2018CF151 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JOSEPH M. MARKS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Barron County:  JAMES C. BABLER, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Nashold, JJ.

¶1      NASHOLD, J.  A jury found Joseph Marks guilty of two sexual crimes that occurred when the victim, "Renee,"[1] was four years old.  This appeal concerns the circuit court's admission, pursuant to WIS. STAT. § 908.08(3), of the audiovisual recording of Renee's statement to a social worker.  Marks argues that the recording is not "free from excision, alteration and visual or audio distortion" under para. (3)(b) of the statute because the State merged a separate audio recording with the video of the interview, so as to produce a final video that the jury could better hear.  Marks further contends that Renee's statement does not:  (1) reflect her understanding that false statements are punishable and the importance of telling the truth, *see* para. (3)(c); or (2) contain sufficient indicia of trustworthiness, *see* para. (3)(d).  Finally, Marks argues that his trial counsel was ineffective for not moving the court to reconsider its admission of the recording upon counsel's later receipt of an expert report critiquing the social worker's interview technique.

¶2      We conclude that the merger of the audio and video in the manner done here, so as to produce a final recording with clear, continuous sound, does not run afoul of the requirements of WIS. STAT. § 908.08(3)(b) because the resulting recording is free from excision, alteration, and visual or audio distortion.  We further conclude, on our independent review, that the recording is admissible under paras. (3)(c) and (d).  Finally, we determine that Marks' trial counsel was not ineffective for failing to bring a motion to reconsider the admission of the recording because Marks cannot show that the expert's report would have caused the circuit court to change its pretrial ruling.  We affirm.

---

[1]  To protect the victim's privacy, and in keeping with the policy expressed in WIS. STAT. RULE 809.86 (2019-20), we refer to the victim by a pseudonym and to her father, mother, stepmother, and teacher by those identifiers.  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

## BACKGROUND

¶3     The following allegations are taken from the criminal complaint. On March 20, 2018, Renee's father and stepmother contacted Cumberland Police Department Officer Greg Chafer. The stepmother reported to Chafer statements that Renee, then four years old, had made to her about Marks. At the time, Marks was the live-in boyfriend of Renee's mother, and the mother and father shared placement of Renee and her two older siblings.

¶4     According to Renee's stepmother, on March 19, 2018, Renee told her the following. Marks asked Renee to pull down her pants, and Renee did so. Marks pulled down his own pants, and Renee saw Marks' penis. Marks "touched" Renee, and then he had her "touch herself" (the stepmother reported that Renee "was pointing to her crotch when she was telling [her] what had happened and where she was touched"). Marks touched Renee "3 times at their old house and once at the new house" (Renee's mother and Marks moved in February 2018). The stepmother asked Renee if Renee had told her mother; Renee said she had not because Marks had told her to keep it a secret.

¶5     On March 21, 2018, Chafer received a call from Renee's prekindergarten teacher, who stated that Renee had told the teacher that she had seen Marks' penis, that Marks had told her to pull down her pants and touch herself, and that Marks then pulled down his pants and touched himself. The teacher reported "that [Renee] told her that she did not want to do it, but that [Marks] told her to just do it."

¶6     On March 22, 2018, Martha Moyer, a social worker for the Barron County Department of Health and Human Services, conducted a forensic interview

of Renee. The interview took place in a room at the police department, with Chafer also present.

¶7 The State charged Marks with one count each of first-degree sexual assault of a child under the age of thirteen and exposing genitals to a child. *See* WIS. STAT. §§ 948.02(1)(e), 948.10(1). The State moved to admit the recording of Moyer's interview of Renee. *See* WIS. STAT. § 908.08(3) (to admit into evidence the audiovisual recording of an oral statement of a child who is available to testify, the court must make certain findings concerning the child's age, understanding, and trustworthiness, the recording's accuracy, and the admission's effect on the fairness of the proceeding).

¶8 The circuit court held an evidentiary hearing on the State's motion. The threshold issue was the admissibility of a modified version of the original interview recording that was created by law enforcement so as to remove audio problems in the original version. *See* WIS. STAT. § 908.08(3)(b) (to be admitted into evidence, the child's recorded statement must be "accurate and free from excision, alteration and visual or audio distortion").

¶9 Chafer testified that when he viewed a DVD copy of the original recording ("the original DVD"), there was no problem with the "visual portion," but "[t]he audio portion was cutting in and out throughout the interview." Moyer, however, had separately recorded the audio portion of the interview on another device. Chafer therefore copied Moyer's recording to a jump drive, listened to it once, and sent the jump drive and original DVD to Larry Flessert, a senior digital forensic examiner at the Department of Justice, Division of Criminal Investigation. Chafer asked if Flessert "would be able to basically scrub the audio off of [the original DVD] and replace it with the audio of [Moyer's] recording." Flessert did

4

just that, producing a new DVD ("the final DVD") that combined the audio from the jump drive with the video from the original DVD. Chafer watched the final DVD in full and determined that the recording contained the complete interview of Renee, did not have any distortions to the video or audio, and did not have any "gaps."

¶10     Flessert testified to the process he used to create the final DVD. He explained that the original DVD stored audio and video tracks in "chunks" or "splintered" media files. As a first step, then, Flessert "merge[d] … together" all of the audio files and all of the video files, so as to create one "file[] that had the entire video portion of the interview and the entire audio portion of the interview." Flessert then used "Vegas Video," a video production program, to "match" Moyer's audio recording with the video of the interview. Flessert explained that Vegas Video allows one to "take a given piece of audio on a certain track and align it with video that's on another track and then put them so that the timing is correct for the two." Flessert determined that Moyer's recording and the video "matched perfectly."[2] Thus, by substituting in Moyer's recording, he created a video with clear, continuous sound. Flessert testified that the process of merging audio and video did not itself create any distortions or alterations or cause any content loss.

¶11     In opposition to the State's motion, Marks argued that the final DVD was inadmissible because it was "pieced … together by some means" and, therefore, was not free from excision, alteration, or distortion under WIS. STAT.

_____

[2] Specifically, to determine that Moyer's audio recording was identical to the audio in the video, Flessert "left the original audio in the program," "layered the audio [that Moyer recorded] below it," and "listened to the two." Flessert stated that he "purposely misaligned" the audio that Moyer recorded just slightly, "so when you listen to it, you get an echo." That is, Flessert explained, "You can hear people speaking and then a very small time later, you hear the[] same words again" from the second audio source. Flessert testified that he listened to the entire interview in this manner and that Moyer's audio tracked the original audio in the video.

§ 908.08(3)(b). Marks further argued that the recording did not satisfy para. (3)(c) because it was not "made … upon the child's understanding that false statements are punishable and the importance of telling the truth."

¶12 The circuit court determined that Renee's recorded statement was admissible under WIS. STAT. § 908.08(3). Specifically, as to para. (3)(b), the court disagreed with Marks' position that the final DVD was inadmissible because it contained excisions, alterations, or visual or audio distortions. The court explained:

> Did they have [a] problem recording it? Yes, but [I] was clearly able to hear and see…. And, according to Mr. Flessert, there's no doubt in his mind that it was accurate the way he put it together. And you could tell that just by looking at it that it was—people's mouthing was appropriate with what was said.

The court further determined that the recording met the other statutory criteria for admissibility under § 908.08(3).

¶13 The State played the final DVD at trial, during Moyer's testimony. The jury found Marks guilty of both counts charged, and the circuit court imposed a total sentence of twelve years of initial confinement and eight years of extended supervision.[3]

¶14 Marks brought a motion for postconviction relief. He argued that his trial counsel was ineffective for not moving the circuit court to reconsider its pretrial ruling on the admissibility of the video recording. Marks based his motion on a

---

[3] On the count of first-degree sexual assault of a child under the age of thirteen, the circuit court imposed a sentence of twelve years of initial confinement and eight years of extended supervision. On the count of exposing genitals to a child, the court imposed a concurrent sentence of one year and six months of initial confinement and two years of extended supervision.

psychologist's report subsequently obtained by trial counsel, which critiqued various aspects of Moyer's interview technique. According to Marks, the report demonstrated that Renee was unreliable and that her interview was "littered with failures." Following a ***Machner***[4] hearing, the court denied the motion.

¶15 Marks appeals. We will discuss further facts related to the pretrial motion hearing and postconviction proceedings where pertinent to our analysis.

## DISCUSSION

*I. Principles of Law and Standards of Review.*

¶16 Our legislature enacted WIS. STAT. § 908.08 so as to allow children to testify in criminal and related proceedings "in a way which minimizes the mental and emotional strain of their participation in those proceedings" while "preserv[ing] the right of all parties to cross-examine those child witnesses." 1985 Wis. Act 262, § 1. Accordingly, § 908.08 provides a procedure for the State[5] to introduce the recorded oral statement of a child who is available to testify, as an alternative to reliance on a hearsay exception under our rules of evidence. Sec. 908.08(7); ***State v. Snider***, 2003 WI App 172, ¶13, 266 Wis. 2d 830, 668 N.W.2d. 784.

¶17 If the State makes a timely and proper offer of proof, then the circuit court is required to hold a pretrial hearing on the statement's admissibility. WIS. STAT. § 908.08(2). The court shall view the statement at or before the hearing, and it shall rule on objections to the statement's admissibility at the hearing.

---

[4] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[5] WISCONSIN STAT. § 908.08 sets forth the procedure that "the party offering the statement" must follow to admit an audiovisual recorded statement. *See* § 908.08(2)(a). For ease of reading, we refer to this party as "the State."

Sec. 908.08(2)(b). The court shall admit the recording upon making five findings under § 908.08(3):

> (a)  That the trial or hearing in which the recording is offered will commence:
>
>> 1.  Before the child's 12th birthday; or
>>
>> 2.  Before the child's 16th birthday and the interests of justice warrant its admission under sub. (4).
>
> (b)  That the recording is accurate and free from excision, alteration and visual or audio distortion.
>
> (c)  That the child's statement was made upon oath or affirmation or, if the child's developmental level is inappropriate for the administration of an oath or affirmation in the usual form, upon the child's understanding that false statements are punishable and of the importance of telling the truth.
>
> (d)  That the time, content and circumstances of the statement provide indicia of its trustworthiness.
>
> (e)  That admission of the statement will not unfairly surprise any party or deprive any party of a fair opportunity to meet allegations made in the statement.

*See also* **State v. Mercado**, 2021 WI 2, ¶45, 395 Wis. 2d 296, 953 N.W.2d 337 ("These statutory criteria require the circuit court to make specific findings about the child, the verity of the recording and the lack of surprise to the opposing party.").

¶18    Marks raises several issues on appeal, with varying standards of review.  First, he argues that the final DVD is not "accurate and free from excision, alteration and visual or audio distortion" within the meaning WIS. STAT. § 908.08(3)(b) solely because it "merges" the audio from Moyer's recording with the original video.  As framed, Marks presents a question of statutory interpretation, which we decide de novo.  *Cf. Mercado*, 395 Wis. 2d 296, ¶43.  In doing so, we

examine the language of the statute; if the meaning is plain, we ordinarily end our inquiry. *Id.*

¶19    Second, Marks argues that the recording does not demonstrate Renee's understanding of the need to tell the truth and that false statements are punishable, *see* WIS. STAT. § 908.08(3)(c), and does not contain sufficient indicia of trustworthiness, *see* para. (3)(d).  Generally speaking, we review evidentiary rulings for an erroneous exercise of discretion.  *See State v. James*, 2005 WI App 188, ¶8, 285 Wis. 2d 783, 703 N.W.2d 727.  That said, we do not employ a deferential standard in the present case.  If the State offers a recording in accordance with § 908.08(2), and if the five criteria of § 908.08(3) are met, then the circuit court "shall" admit the recording.  *See* § 908.08(3).  Moreover, where the evidence to be admitted is a videotape, "we are in as good a position as" the circuit court to determine whether the recorded statement conforms to paras. (3)(c) and (d).  *State v. Jimmie R.R.*, 2000 WI App 5, ¶39, 232 Wis. 2d 138, 606 N.W.2d 196 (applying this principle to review of circuit court findings under para. (3)(c)); *see also State v. Holt*, No. 2013AP2738-CR, unpublished slip op. ¶24 (WI App Mar. 8, 2016) (applying same principle to findings under paras. (3)(c) and (d)).  Thus, our review here is de novo.[6]  *Jimmie R.R.*, 232 Wis. 2d 138, ¶39; *Holt*, No. 2013AP2738-CR, ¶24.

---

[6]  In *State v. Holt*, No. 2013AP2738-CR, unpublished slip op. ¶24 (WI App Mar. 8, 2016), this court stated that it would review de novo the circuit court's determinations under WIS. STAT. § 908.08(3)(d) because the audiovisual recording was part of the record.  We do not preclude the possibility that, in some circumstances, the determination of "indicia of trustworthiness" might involve either discretionary decision-making or fact-finding not based on the recording itself, and thus might warrant deferential review.  For purposes of this decision, however, we apply the de novo standard—the standard most favorable to Marks—to the court's determination under para. (3)(d).

¶20 Finally, to demonstrate ineffective assistance of counsel, a defendant must show that counsel's performance was constitutionally deficient and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Thiel*, 2003 WI 111, ¶¶18-20, 264 Wis. 2d 571, 665 N.W.2d 305. In reviewing this claim, we employ a mixed standard of review. *Id.*, ¶21. We uphold the circuit court's factual findings unless clearly erroneous, but we review de novo whether those facts demonstrate that counsel's performance was objectively deficient and prejudicial. *Id.*

## II. *The Recording is Accurate and Free from Excision, Alteration, and Visual or Audio Distortion.*

¶21 As stated, prior to admitting a child's recorded statement, the circuit court must determine that the "recording is accurate and free from excision, alteration and visual or audio distortion." WIS. STAT. § 908.08(3)(b). Marks argues that the final DVD—the recorded interview of Renee played to the jury—does not meet these criteria. Importantly, Marks does *not* argue that a viewer watching the final DVD would be unable to clearly see or hear the interview because of audio or visual problems with the recording. Nor does Marks argue that portions of the interview are missing or that the recording is otherwise inaccurate. Rather, it is Marks' position that the final DVD is "plainly inadmissible" under para. (3)(b) because of *the process used to create it*. That is, Marks argues, Flessert's "merging" of the original video and Moyer's audio recording itself renders the final recording inadmissible.

¶22 We disagree. The purpose of WIS. STAT. § 908.08 is to make it easier to use the videotaped statements of children in criminal and related proceedings, while preserving the defendant's constitutional right to cross-examine witnesses. *Snider*, 266 Wis. 2d 830, ¶13; *see also* 1985 Wis. Act 262, § 1. Given this purpose,

para. (3)(b) sets forth standards for the recording shown to the jury or otherwise relied on in lieu of the child's direct testimony. Thus, plainly, the purpose and intent of para. (3)(b) is to require, in fairness to the defendant, that the recording faithfully represent the actual content of the interview.

¶23   With this context in mind, we consider the meaning of the statutory requirement that the recording be "accurate and free from excision, alteration and visual or audio distortion."  *See* WIS. STAT. § 908.08(3)(b).  Our interpretation begins with the language of the statute.  *See **State ex rel. Kalal v. Circuit Ct. for Dane Cnty.**,* 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.  We interpret statutory language "in the context in which it is used; not in isolation but as part of a whole." ***Id.**,* ¶46.

¶24   As indicated, the word "accurate" in WIS. STAT. § 908.08(3)(b) refers to the recording's faithful representation of the interview content.  Understood in context, then, the terms "excision," "alteration," and "distortion" relate to this concept of accuracy.  Put another way, a recording that is impermissibly excised, altered, or distorted does not present to the fact-finder a true and complete depiction of the interview, and thus is not accurate.  Accordingly, our framework considers whether the manipulation of the recording that occurred here impacted the accuracy or completeness of the final recording shown to the jury.

¶25   We now turn to the dictionary meaning of the statutory terms.  *See **Southport Commons, LLC v. DOT**,* 2021 WI 52, ¶28, 397 Wis. 2d 362, 960 N.W.2d 17 ("For purposes of statutory interpretation or construction, the common and approved usage of words may be established by consulting dictionary definitions.").  A "distortion" is "a twisting or deforming out a natural, normal, or original shape, form, or condition."  *Distortion*, WEBSTER'S THIRD NEW INTERNATIONAL

DICTIONARY (unabr. 1993). Based on this definition, it might be accurate to say that *the original DVD* contains audio distortions (the sound cuts in and out) and that it therefore does not reflect the substance of the interview. But the original DVD was not played to the jury; instead, the jury viewed the final DVD: a video containing clear and continuous sound. Because Marks points to no audio distortion in the final DVD, we conclude that this recording—the recording actually played to the jury—is free from "visual or audio distortion" under WIS. STAT. § 908.08(3)(b).

¶26    An "alteration" is a "change" or "modification." *Alteration,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabr. 1993). Along similar lines, an "excision" means "the act or procedure of" "remov[ing]" or "cut[ting] out." *Excision*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabr. 1993). Certainly, there were portions of the original DVD that were changed or removed, in that Moyer's audio recording replaced the original audio. But we do not view WIS. STAT. § 908.08(3)(b) as prohibiting this type of non-substantive modification—i.e., an alteration or excision that *restores* sound quality so as to *more precisely capture* the content of the interview. Such alteration or excision creates or enhances (as opposed to obscures) the accuracy of the recording and thus is consistent with the purpose and intent of the statute.

¶27    To be clear, our holding is narrow and applies to the facts before us. Again, there is no allegation that the final DVD is an inaccurate representation of the content of the interview. Nor does Marks challenge the State's process for creating this DVD. He does not argue, for example, that Moyer's audio was inaccurate or distorted or that Flessert did not properly merge the audio and video. Thus, we simply hold that neither the plain language of WIS. STAT. § 908.08 nor its underlying purpose requires us to reject the admission of a recording meeting the

12

criteria of § 908.08(3), based solely on the State's manipulating the original video in the manner that occurred here.

### III. The Recording Meets the Standards of WIS. STAT. § 908.08(3)(c) and (d).

¶28    Marks raises two additional arguments relating to the admissibility of Renee's recorded statement.  First, he argues that the statement was not made upon Renee's "understanding that false statements are punishable and of the importance of telling the truth."[7]  *See* WIS. STAT. § 908.08(3)(c).  In support of this position, Marks points out that Moyer made seven inquiries to establish Renee's ability to distinguish truth and lies and that Renee said, "I don't know," or shrugged in response to five out of the seven inquiries.  Moreover, Marks notes that Renee was "unable to identify either of two [subsequent] statements offered by Ms. Moyer as being either the truth or a lie."  Finally, Marks points out that Renee responded, "I don't know," to Moyer's question, "So what happens if a kid were to tell you something that wasn't true, what might happen?"  Marks argues that because Renee "failed to identify statements as truths or lies, and her understanding of the consequences of lying is mixed," we should conclude that Renee "does not understand the difference between a lie and the truth."

¶29    Having viewed Renee's recorded interview, we readily acknowledge that Marks has accurately described these select portions of the recording.  That is, Renee's answers to certain questions did not, in and of themselves, reflect her understanding that false statements were punishable and that it was important to tell

---

[7] A child's statement must be "made upon oath or affirmation or, if the child's developmental level is inappropriate for the administration of an oath or affirmation in the usual form, upon the child's understanding that false statements are punishable and the importance of telling the truth." WIS. STAT. § 908.08(3)(c).  By not arguing otherwise, Marks implicitly concedes that the administration of an oath or affirmation would have been inappropriate in this case.

the truth. We conclude, however, that other portions of the recording, and the recording as a whole, demonstrate that Renee understood these concepts. When Moyer asked Renee about the difference between a truth and a lie, Renee responded, "If you lie you get in trouble, if you tell the truth, you not [sic] get in trouble." Renee also responded in the affirmative ("yeah" or "uh-huh" with nodding) to Moyer's questions, "Do you think it's important to tell true things and things that actually happened?" and "Do you promise to only talk about things that have actually happened?" Moreover, at the outset of the interview, Moyer instructed Renee to always respond "I don't know" if she did not know an answer, as opposed to guessing an answer. Renee in fact responded, "I don't know," throughout the interview, suggesting that she took Moyer's instructions to heart.

¶30 Thus, the recording reflects that Renee was at times confused by or unresponsive to Moyer's questioning. However, Renee also articulated her own understanding of a truth versus a lie, and she expressed, in her own words, the importance of telling the truth. Whether a recording complies with WIS. STAT. § 908.08(3)(c) does not involve a rigid determination as to whether the child correctly answered every question. Rather, we must examine the child's statement in its entirety. Here, we independently conclude that Renee's statement was made upon an understanding of the consequences of false statements and the importance of telling the truth.

¶31 Marks further argues that "the time, content and circumstances of [Renee's] statement [do not] provide indicia of its trustworthiness." *See* WIS. STAT.

§ 908.08(3)(d). Based on our review of the recording, we again disagree.[8] Marks' arguments on this point center on his expert's critiques of Moyer's interview technique. Marks' expert states, for example, that it is "unusual" for more than one person to be sitting in on the interview; that Moyer did not "pursue open-ended questioning" after Renee provided an initial, unprompted description of the assault; and that Moyer may have chosen names for "vagina" and "penis" that were not Renee's "preferred terms for sexual anatomy." But these rather scattered and haphazard criticisms do not lead to the conclusion that Moyer's manner of interview caused, or was likely to cause, Renee to give false or untrustworthy responses to Moyer's questions.

¶32    Marks also directs us to purported differences between Renee's statement and certain statements we have deemed trustworthy in other cases. *See, e.g.*, *Holt*, No. 2013AP2738-CR, ¶36 (noting that a young child's being able to "vividly" demonstrate oral sex with dolls is "unusual and supports a finding of trustworthiness"). But there is no specific set of facts that must be present in order for a court to conclude that a child's statement is sufficiently trustworthy under WIS.

---

[8] The State argues that Marks forfeited his argument that the recording did not comply with WIS. STAT. § 908.08(3)(d). *See State v. Huebner*, 2000 WI 59, ¶¶10-11 & n.2, 235 Wis. 2d 486, 611 N.W.2d 727 (arguments not made to the circuit court are generally deemed forfeited and will not be considered on appeal). For the sake of completeness, however, we exercise our discretion to reach the merits of this argument. *See State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702 ("Forfeiture is a rule of judicial administration, and whether we apply the rule is a matter addressed to our discretion.").

STAT. § 908.08(3)(d),[9] and we decline to rigidly apply or rely on the facts of other cases as a benchmark.

¶33   Marks further suggests that Moyer's questions reflected her own biases and were not open-ended. We disagree with his assessment. The manner of Moyer's questioning and the questions themselves did not direct or encourage Renee to respond in any particular manner. In fact, Renee gave only one narrative description of sexual contact with Marks, and this account was in response to a relatively broad and open-ended question at the beginning of the interview.[10] Moyer then followed up with specific questions based on Renee's initial narrative, but she never asked her questions in a way that suggested a "right" answer.

---

[9] Marks cites *State v. Sorenson*, 143 Wis. 2d 226, 245-46, 421 N.W.2d 77 (1988), which sets forth the five-part test for determining whether a child's statement contains "circumstantial guarantees of trustworthiness" and is thus admissible under a residual hearsay exception. *See* WIS. STAT. §§ 908.03(24) (the residual hearsay exception where the availability of the declarant is immaterial), 908.045(6) (the residual hearsay exception where the declarant is unavailable). However, Marks makes no effort to apply these factors. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we may choose not to address arguments that are inadequately developed). Furthermore, although the *Sorenson* factors may guide our application of WIS. STAT. § 908.08(3)(d), they do not control. *See, e.g.*, *Holt*, No. 2013AP2738-CR, ¶¶34-40 (applying the *Sorenson* factors to determine admissibility under para. (3)(d)).

[10] The following exchange encompasses Renee's complete initial description of the assault:

> [Moyer:] So [Renee] do you know why you're here today?
>
> [Renee:] No.
>
> [Moyer:] Okay, so sometimes when I talk to kids, we talk about problems or worries. Do you have any problems or worries?
>
> [Renee:] A long time ago, at the old house and at the new house, [Marks] told me pull down my pants then he pulled down his pants and I saw his penis. Then he tell me pull down my pants then he touched my penis then I said I don't wanna touch his penis because he touches mine then I touches mine.

¶34　Moreover, we agree with the circuit court's statement that "there didn't appear to be … any coaching" of Renee.　Although we are unable to determine whether a person other than the interviewer told Renee what to say, we agree with the State that Renee's description of the assaults was "in a manner proper to a four-year-old child."　In addition, Renee did not display any animosity or negativity towards Marks.　In fact, as the court noted, Renee said "some pretty nice things" about Marks.　Thus, it does not appear that Renee had any ulterior motive for alleging sexual contact.　Finally, Renee made her statement relatively close in time to the charged dates of the crimes, which lessens the likelihood that she would have forgotten the events described.

¶35　Based on the foregoing, we conclude that the time, content, and circumstances of Renee's statement provide sufficient indicia of trustworthiness under WIS. STAT. § 908.08(3)(d).

*IV.　Trial Counsel Did Not Provide Ineffective Assistance.*

¶36　Finally, Marks argues that his trial counsel was ineffective because, once counsel received an expert report critiquing Moyer's interview technique and Renee's reliability, counsel did not move the circuit court to reconsider its admission of the recorded statement.　This claim fails because Marks has not shown that trial counsel's performance was prejudicial.　That is, Marks has not shown that, had counsel brought a motion to reconsider, there would have been a reasonable likelihood of a different result with respect to the admission of the recorded statement and, consequently, to the outcome of the trial itself.　*See Strickland v. Washington*, 466 U.S. 668, 694 (1984) (to demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); *id.*

at 697 (we need not address both the "deficiency" and "prejudice" prongs of an ineffective assistance claim where the defendant makes an insufficient showing on one).

¶37 At the ***Machner*** hearing, trial counsel testified that he did not consider filing a motion for reconsideration upon receiving the expert's report because he did not find the critiques of the interview "terribly compelling." In denying Marks' postconviction motion, the circuit court implicitly agreed with counsel's assessment. The court stated, "[H]aving read that report, I can't concede that this court would have made a different ruling. There just wouldn't have been one." Thus, the court apparently agreed with the State's argument that the expert's critiques "went to the weight [of Renee's statement] rather than admissibility."

¶38 On this record, we have no basis to disturb or second-guess the circuit court's conclusion that it would have admitted the recorded statement even if Marks had submitted the expert report prior to the pretrial hearing. *See **Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.***, 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853 (we review the circuit court's decision on a motion to reconsider for an erroneous exercise of discretion). Accordingly, counsel's performance in not seeking reconsideration cannot have contributed to the guilty verdict. *See, e.g.*, ***State v. Simpson***, 185 Wis. 2d 772, 784, 519 N.W.2d 662 (Ct. App. 1994) (where the postconviction court determined the merits of the suppression issue in the State's favor, there could be no prejudice stemming from trial counsel's failure to move to suppress, because that motion would have been denied).

**CONCLUSION**

¶39    We conclude that Renee's recorded statement, which was created by merging separate video and audio recordings of her interview, is "accurate and free from excision, alteration and visual or audio distortion" under WIS. STAT. § 908.08(3)(b).    We further determine that the circuit court properly admitted Renee's recorded statement under the other criteria of § 908.08(3).    Finally, we conclude that Marks' trial counsel did not provide ineffective assistance by not bringing a motion to reconsider that ruling, as that motion would have been denied in the court's appropriate exercise of discretion.    Accordingly, we affirm the judgment of conviction and the postconviction order.

        *By the Court.*—Judgment and order affirmed.