COURT OF APPEALS
DECISION
DATED AND FILED

March 27, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP874-CR**

Cir. Ct. No. 2017CM1014

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JOAN L. STETZER,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waukesha County: PAUL BUGENHAGEN, JR., Judge. *Affirmed.*

¶1 LAZAR, J.[1] Joan L. Stetzer appeals from a judgment of conviction for violating WIS. STAT. § 346.63(1)(b), operating a vehicle with a prohibited

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

alcohol concentration ("PAC") (second offense). She argues that the trial court misapplied the law with respect to her defense of coercion, which was based on her being a battered spouse coerced to drive with a PAC to flee assault by her husband. For the following reasons, this court concludes the trial court correctly applied the law and affirms.

## BACKGROUND

¶2 Stetzer stipulated that her blood alcohol concentration was above the legal limit for driving when she was arrested at around 2:13 a.m. on May 24, 2017. She waived her right to a jury trial and requested a court trial instead. The trial court concluded that her defense of coercion did not apply even it accepted all facts presented by Stetzer "as true up to the time that [she] leaves the driveway." Those facts, gleaned from Stetzer's own testimony as well as that of her husband and an expert witness on domestic violence, are as follows.

¶3 As a child, Stetzer witnessed (and was a victim of) domestic violence (specifically her father's physical abuse of her mother) in her home. She grew up and become a physician, married a man named Bill in 1989, and lived with him and their four children (ages twelve to nineteen) in a home in Pewaukee at the relevant time. In early 2015, Stetzer discovered that Bill had been unfaithful. Fights regarding his infidelity led to numerous instances of Bill physically (as well as emotionally and sexually) abusing Stetzer in the years that followed.

¶4 In the first instance of physical abuse, in January 2015, Bill threw Stetzer into a fireplace, causing injury to her hip. In March of that year, he threw her down multiple times, screaming and yelling at her. In July 2015, Bill started yelling at Stetzer at a restaurant; she walked home, and he followed in his car

2

while yelling at her and calling her offensive names. In August 2015, Bill shoved Stetzer into an open cupboard door causing her to scratch her face. Roughly a year later, in the summer of 2016, Stetzer was living at the couple's lake property in Merton when she stopped by the Pewaukee house to get some clothes. Bill shoved her several times, causing her to "face plant[]" in the driveway. Finally, Stetzer recounted an incident in the fall of 2016 during which Bill used his hands to twist her neck ninety degrees, again causing pain and injury.

¶5 On the night leading up to the arrest underlying this case, May 23, 2017, Stetzer had several glasses of wine in the course of making and eating dinner. Another argument between Bill and Stetzer about Bill's affairs erupted after dinner. Bill "went irate" and used a "lot of profanity again." According to Stetzer, Bill pushed her several times before "[g]etting in [her] space, grabbing [her] arm, [and] pushing [her] shoulders." Bill then left the house.

¶6 Bill returned several hours later, at around 1:00 a.m. on May 24, because he learned (from a call from his daughter as well as a text message from Stetzer) that Stetzer had thrown all his clothes outside on the patio where they were becoming soaked in the rain. Stetzer, who was asleep in pajamas, woke up from the sound of the door slamming and Bill "yelling and screaming and swearing." In the ensuing confrontation, Bill screamed at her to pick up his clothes and said, "I'm going to take you out if you don't do it." After shoving her several times toward the door leading out to the patio, he pushed her down a stairway to get her out of his way. Stetzer fell down seven or eight stairs and experienced pain in her shoulder, chest, neck, and hip. She got up, walked up the stairs, and then "drank two large pour glasses of wine" rather than going to the emergency room, which she did not want to do "because [she] was embarrassed and humiliated."

¶7 At that point, Bill threatened to call the police. Stetzer walked outside and stood in the rain with no phone, driver's license, or shoes. Eventually, she went back into the kitchen, where Bill told her to "get the hell out" while running at her "with his fist closed and a look that [she had] never … seen on his face." He grabbed a heavy pot and chased her into the garage, where he threw the pot at her. Stetzer got into her truck. The keys were in the visor inside of the truck. She locked the doors and started the truck. At that point, she had her son's cell phone with her (which she had grabbed from the kitchen when she went back inside after standing in the rain), though she testified that it was passcode locked. Bill was pounding on the windows of the truck, saying, "I'm going to take you out you fucking bitch."

¶8 Doctor Darald Hanusa, an expert on domestic violence who had been hired by the defense and who had conducted a six-hour interview of Stetzer, testified that this moment—"where [Stetzer was] in her car and he's banging on the window"—"presents a classic dilemma for her" in that she had to choose between staying and possibly "being injured" and taking the "risk to drive a car to flee to safety." She knew she had consumed alcohol and agreed that it was not "a good idea to be driving." But, as Hanusa opined, women with a history of abuse often experience intense fear that can provoke a "fight, flight, or freeze" reaction. Stetzer explained that she "didn't feel [she] had another alternative" but to drive away. She drove away. Initially, she "didn't even know" where she was going; she was "just trying to escape." She testified that her Pewaukee house was in "a pretty rural area" without many neighbors. She decided to go to her lake house in Merton, approximately a fifteen-minute drive away.

¶9 When she was approximately halfway to the lake house, Stetzer passed a squad car on the side of the highway. She stated that she "thought about"

stopping there and asking for help, but that she had "called the police on two … occasions when being physically abused," and that each time, "Bill lied and [she] got arrested." She did not stop for help because she thought the police wouldn't believe her. The officer that she passed stopped her shortly afterward and, eventually, Stetzer was taken to a hospital and arrested for driving with a PAC.[2]

¶10 The State conceded that Stetzer met her burden of production for a coercion defense—in other words, that she satisfied the "relatively low" threshold of putting forth "some evidence" of each component of the defense. *See State v. Schmidt*, 2012 WI App 113, ¶34, 344 Wis. 2d 336, 824 N.W.2d 839; *State v. Peters*, 2002 WI App 243, ¶27 n.4, 258 Wis. 2d 148, 653 N.W.2d 300. In closing, the State acknowledged Stetzer's history of domestic abuse. It then pointed out that when she left her home on May 24, after her husband chased her with a pot, she had a phone with her that—despite being passcode locked—could have been used to place an emergency call. It also noted additional options available to Stetzer besides driving all the way to Merton with a PAC, one being going to an open hotel in Pewaukee and another being stopping at the police car she saw. The State questioned whether it was reasonable to believe that driving to the lake house was Stetzer's only option for escape.[3]

---

[2] Stetzer was also charged with disorderly conduct, domestic abuse. The trial court later granted the State's motion to dismiss this charge.

[3] The State also called into question whether Stetzer was credible in asserting that she feared imminent death or great bodily harm such that leaving her house was necessary, pointing out that "after the most violent incident during [the night in question]"—that being Stetzer's husband pushing her down the stairs—Stetzer did not "leave then and there" but rather "decide[d] to drink two glasses of wine" in addition to what she had already consumed.

¶11     Stetzer's counsel used his closing argument to remind the court that it was "the State's burden to disprove [the coercion defense] beyond a reasonable doubt" and that "[t]he standard is what a person of ordinary intelligence and prudence would have believed in the defendant's position under the circumstances that existed at the time of the alleged offense … when the decision was made to unfortunately drive under the influence." Counsel emphasized Hanusa's testimony that victims like Stetzer tend to be secretive about their abuse because of the embarrassment they can encounter in seeking help and treatment and argued that "the only safe place she knew at that time of the day [was] the home in Merton."

¶12     After a brief recess, the trial court explained its conclusion that the defense of coercion did not apply. This conclusion was based on "the timing issue" the court saw with the facts as presented by Stetzer. "[T]ak[ing] everything as true up to the time that Dr. Stetzer leaves the driveway," the court stated, and "accepting all the circumstances that were going on at that point," including "that definitely she had to get out of there, that there was a fear of great bodily harm or death," the court found that "once she's out of the driveway she has more options." It continued:

> Beyond a reasonable doubt she passed a police officer…. [S]he was clearly driving. She passed a police officer. She's in a city she knows. So beyond a reasonable doubt she knows there's other means of safety around other than going to the lake house ….
>
> Of much importance in my consideration, the law doesn't ask me to determine if her actions were reasonable. I could find that she was acting reasonably in trying to go to that lake. The law requires that this is the only means of prevention. It may have been reasonable for her to think well this is a safe thing for me to do because this has worked in the past, and that's where this becomes difficult on me as a person, but I can't rule just upon my own

6

personal beliefs. I can't take sympathy and say I don't want Dr. Stetzer to be in this position because it's unfair. She shouldn't have been in that position.

The law carves out defenses. In this case it's a very specific defense, and it only provides for a violation of the law when it was the only means of preventing that great bodily harm. Since her actions once she's out of that driveway and driving was not the only means of preventing great bodily harm, I find that the defense[']s beyond a reasonable doubt not available.

As part of my reasoning, there has to be an end point to the defense…. Public policy wouldn't support that [a] person could keep on driving indefinitely, that you could get in the car and say well I have to drive to—from Wisconsin to Tennessee because I need to be so far away from that situation. So her actions were reasonable. I don't discount that. The law however provides that it has to be the only means of preventing great bodily harm or imminent death. I can't find that so that is the decision.

¶13 Stetzer's argument on appeal is that the trial court erred when it "misapplied the law by relieving the State of its burden to prove that [she] was not acting lawfully under the defense of coercion." Stetzer concedes that the court correctly stated "that the State had the burden of proving beyond a reasonable doubt that [Stetzer] was not acting lawfully under the defense," and thus at least professed to be applying the correct legal standard. She asserts, however, that the court incorrectly stated that "[t]he law … provides that it has to be the only means of preventing great bodily harm or imminent death" rather than evaluating "whether the actor *reasonably believes* that the actions are the only means of preventing great bodily harm or death."

## DISCUSSION

¶14 This court reviews the question of whether the trial court applied the correct legal standard de novo. ***State v. Magett***, 2014 WI 67, ¶27, 355 Wis. 2d 617, 850 N.W.2d 42. Statutory interpretation is also reviewed de novo. ***State v.***

*Marks*, 2022 WI App 20, ¶18, 402 Wis. 2d 285, 975 N.W.2d 238, *review denied*, 2022 WI 104, 997 N.W.2d 389.

¶15     The defense of coercion is codified in WIS. STAT. § 939.46(1), which provides in relevant part that:

> A threat by a person other than the actor's coconspirator which causes the actor reasonably to believe that his or her act is the only means of preventing imminent death or great bodily harm to the actor or another and which causes him or her so to act is a defense to a prosecution for any crime based on that act.

¶16     Again, the parties agree that the trial court correctly articulated the defense and correctly stated that it was the State's burden to prove, beyond a reasonable doubt, that the elements of this defense were not met.   One such element is "[a] finding, under the objective-reasonable [person] test, with regard to the reasonableness of the actor's beliefs that [she] is threatened with immediate death or great bodily harm with no possible escape other than the commission of a criminal act." *State v. Amundson*, 69 Wis. 2d 554, 568, 230 N.W.2d 775 (1975), *overruled on other grounds by State v. Wayerski*, 2019 WI 11, 385 Wis. 2d 344, 922 N.W.2d 468.  Thus, the defense requires both a reasonable belief that the actor is in imminent danger of death or physical harm *and* a reasonable belief that the otherwise illegal action is the actor's only means of escape.  *Id.*; *see also State v. Ventrice*, No. 2001AP1494-CR, unpublished slip op. ¶10 (WI App Dec. 28, 2001) (listing elements of coercion defense).[4]

---

[4] Unpublished cases may not be cited for precedential value, but may be cited for persuasive value. *See* WIS. STAT. RULE 809.23(3)(a), (b).

¶17 "Coercion is highly analogous to the privilege of self-defense." *Amundson*, 69 Wis. 2d at 568. Like self-defense and defense of others, it requires that the commission of the criminal act not go on longer than reasonably necessary to escape imminent death or great bodily harm. *See, e.g.*, *State v. Nollie*, 2002 WI 4, ¶26, 249 Wis. 2d 538, 638 N.W.2d 280 (defendant claiming self-defense to crime of felon in possession of a firearm must show that the weapon was not possessed "longer than reasonably necessary"); *State v. Jones*, 147 Wis. 2d 806, 815, 434 N.W.2d 380 (1989) (key question in determining whether defense-of-others jury instruction was warranted was whether the danger had passed when the otherwise criminal act occurred).

¶18 Our unpublished opinion in *State v. Yenter*, No. 2017AP2253, unpublished slip op. ¶13 (WI App Nov. 29, 2018), aptly dealt with facts somewhat similar to Stetzer's and concluded that the coercion defense was not available because "even assuming that a reasonable person in [defendant]'s position would have initially believed that driving himself was the only way to avoid bodily harm, the offer of proof did not demonstrate that [his] only reasonable option *continued* to be that he must drive all the way to his house." In *Yenter*, the defendant appealing a DUI conviction asserted that he was fleeing a party in a rural area where a physical altercation put him in fear of his life and that getting to his house—sixteen miles away—was the safest way to avoid danger. *Id.*, ¶¶8-11. The court determined that no reasonable factfinder could find that it was reasonable for the defendant to believe that driving all the way to his house was the only way to avoid death or bodily harm, noting that the defendant could have called the police, stopped at a closer-by public place or farmhouse, or had a sober passenger take over driving before the point at which he was stopped (about fifteen miles from the party). *Id.*, ¶¶11, 14, 17.

¶19     While the *Yenter* court concluded the coercion defense was unavailable as a matter of law, *id.*, ¶17, the trial court here allowed Stetzer to assert the defense and shifted the burden to the State to disprove its elements at the conclusion of the trial (a trial in which a defense expert also testified). Stetzer does not acknowledge or address the court's explicit factual finding that, at the point when she passed a police car on the side of the road about halfway between her home in Pewaukee and her lake house in Merton—which took approximately eight minutes to drive—"beyond a reasonable doubt she knows there's other means of safety around other than [continuing on and] going to the lake house." The court's rejection of the coercion defense rested on this factual finding: the State had proven beyond a reasonable doubt that Stetzer did not have a reasonable belief, at least at that point, that driving another eight or so minutes to the lake house was her only option for avoiding imminent death or bodily harm.

¶20     There is no inconsistency between this factual finding and the trial court's additional statement that it "could find that she was acting reasonably in trying to go to that lake." In context, this statement obviously means that the court could have determined that driving to the lake house was one of several reasonable plans for escaping her husband—one that Stetzer used successfully in the past, when she was presumably driving there unimpaired. That does nothing to negate the fact that the codified coercion defense requires a reasonable belief, at every moment that the defendant is asserting she was coerced to engage in otherwise criminal conduct, that the otherwise criminal conduct is the *only* way to prevent death or bodily harm. *See* WIS. STAT. § 939.46(1). Again, the court found as a factual matter that Stetzer did not possess this reasonable belief at least as of when she passed the squad car. As the court noted, the question is one of timing: even

if it was reasonable to drive out of her driveway, as she continued to drive, that reasonableness of continuing to drive diminished the further she drove.

¶21 Nor is this is a case of the trial court committing legal error by improperly narrowing the objective component of the defense (the reasonableness of the belief) contrary to the well-established principle that a belief may be reasonable even if it turns out to be incorrect, as Stetzer argues in her reply brief. It is true that, as stated in the Wisconsin jury instruction on coercion, "[a] belief may be reasonable even though mistaken." WIS JI—CRIMINAL 790; *see also Miller v. State*, 139 Wis. 57, 76, 119 N.W. 850 (1909) (holding that a person in imminent danger of losing his life or receiving some injury is justified in acting to avert such danger upon "honest, reasonable apprehension" even "[i]f it turns out that there was no such danger in fact"). But the court did not state or suggest that, at the point when Stetzer had driven miles from her Pewaukee house and passed the police car, she had a reasonable yet mistaken belief that fleeing to her lake house was the only means of avoiding imminent death or harm. It stated, rather, that even if the initial plan to escape to the lake house was reasonable, at the point when Stetzer passed the squad car, "beyond a reasonable doubt *she knows* there's other means of safety around other than going to the lake house." (Emphasis added.)

¶22 Again, this is a factual finding, and one this court could not overturn even if Stetzer had argued that it was clearly erroneous, which she did not. *See State v. Owens*, 148 Wis. 2d 922, 933, 436 N.W.2d 869 (1989) ("The defendant's state of mind or belief is an historical fact and is reviewed by the clearly erroneous or against the great weight and clear preponderance of the evidence standard."). The finding that Stetzer did not reasonably believe that her only option at that point in time was to continue driving with a PAC is supported by evidence that she

"thought about" stopping when she passed the police car, that she knew there was an open hotel on her way to Merton, and that she had a phone with her (albeit "pass coded").

¶23 Indeed, Stetzer's evidence regarding her beliefs (and their reasonableness in light of her circumstances) was largely directed to her initial decision to drive after drinking in order to escape her husband. She testified that she "didn't feel [she] had another alternative" to driving because she had to "get the hell out of there." Accepting (as the trial court did) that driving was the correct answer to the "classic dilemma" that Stetzer's expert said she faced "at the point where [Stetzer is] in her car and he's banging on the window,"[5] the evidence in the Record does not show that Stetzer *continued* to hold a reasonable belief that, once she was out of her husband's immediate vicinity, driving on to Merton was "the only means of preventing imminent death or great bodily harm." *See* WIS. STAT. § 939.46(1).

¶24 Stetzer admitted that she considered stopping when she saw the police car and explained why she chose not to when she testified: "I thought should I stop, and I thought no, I'm not going to stop, I have called the police on two other occasions when being physically abused. Bill lied and I got arrested." Her expert's testimony was that "[e]mbarrassment is a huge factor for wom[e]n who are abused" that, along with their desire to prevent the abuser from getting

---

[5] The expert also opined that Stetzer suffered from battered woman syndrome, "an extension of [post traumatic stress disorder]" that can lead sufferers to experience a "fight, flight, or freeze situation." He elaborated that "the fear factor is probably the primary motivator that drives a victim's decision." The expert agreed that he was hired to shed light on "why [Stetzer] left the house." As Stetzer's counsel argued, her previous abuse informed her decision to flee. The trial court's decision, however, was not based on the initial decision to flee but rather the decision to continue driving when other options for preventing physical harm became available.

into trouble in hopes that the relationship will work, can lead them to avoid seeking help from law enforcement. None of this evidence, or any other evidence in the Record, suggests that Stetzer's history of abuse or "adverse relationship with the police" (as her expert put it) led to a reasonable belief that she would still be at risk of "imminent death or great bodily harm" in the police's presence. The narrow statutory defense of coercion requires that her otherwise unlawful act (driving with a PAC) be the only means of preventing "imminent fear of death or bodily harm." *See* WIS. STAT. § 939.46(1). Stetzer does not argue that an otherwise unlawful act to prevent embarrassment or legal consequences would satisfy this element. While this court acknowledges that such concerns may be legitimate and serious, the law provides that the coercion "is a defense limited to the most severe form of inducement." *See **Amundson***, 69 Wis. 2d at 568.

## CONCLUSION

¶25 After hearing extensive testimony on domestic violence in general and the particulars of the abuse suffered by Stetzer, the trial court clearly empathized with Stetzer (as does this court) and found that she was in an "awful" and "unfair" position on May 24, 2017. Accepting that Stetzer was justified in her initial action of driving with a PAC to escape her husband's assault, the trial court found as a factual matter that beyond a reasonable doubt, at least at the point that Stetzer passed a police car, she no longer held a reasonable belief that continuing to drive with a PAC was the only way to avoid imminent death or bodily injury. Because the trial court did not commit legal error in its application of the law, the judgment is affirmed.

13

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.